# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JOYCE A. MORSE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:19-cv-1142 |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT M. HARE, INDIVIDUALLY AND D/B/A LAW OFFICE OF SCOTT M. HARE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION ON MOTIONS TO DISMISS AND STRIKE
## [ECF 16]

### J. Nicholas Ranjan, United States District Judge

Joyce Morse filed this action against her former attorney, Scott Hare, alleging that he was professionally negligent by missing a statute of limitations for filing an arbitration demand and not telling her the true status of her legal claims for many years. Ms. Morse also alleges that Mr. Hare inflicted emotional distress on her by both making and then covering up his mistakes.

Mr. Hare has moved to dismiss the amended complaint. He argues, ironically, that Ms. Morse's claims against him are barred by the two-year statute of limitations. And he further argues that Pennsylvania law does not recognize emotional-distress claims in legal-malpractice cases, but that even if it did, the conduct here was not sufficiently "extreme and outrageous" to state such a claim.

Mr. Hare's motion is premature. Further factual development is necessary before resolving the statute-of-limitations defense, particularly considering the conflicting statements in the amended complaint as to when

Ms. Morse learned about Mr. Hare's errors and the fact-intensive application of the discovery rule and fraudulent-concealment tolling doctrines. Further, Pennsylvania law does, in fact, support emotional-distress claims in the context of a legal-malpractice action; whether Ms. Morse can produce enough evidence to meet the standard for that claim is a matter for additional factual development.

Mr. Hare has also moved to strike allegations in the amended complaint that accuse him of violating the Pennsylvania rules of professional conduct. Motions to strike are "highly disfavored," and since the allegations are not prejudicial, they will not be struck. The Court will thus deny Mr. Hare's motions to dismiss and strike.

## FACTUAL & PROCEDURAL BACKGROUND[1]

In 2009, Ms. Morse hired Betts, Hull & Klodowski, LLC ("BH&K") to represent her in a lawsuit against her former investment advisors, Fisher Asset Management, LLC, Stewart Hollingshead, and Shawn Weidmann (the "Advisors") after the Advisors mismanaged her retirement assets. [ECF 14 at ¶ 9].

On June 11, 2009, BH&K filed a state-court lawsuit against the Advisors with claims for breach of fiduciary duties; common-law fraud; violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; negligence; breach of contract; and failure to supervise. [*Id.* at ¶¶ 10-11]. BH&K also drafted an arbitration demand for potential filing with the Judicial Administration and Mediation Service ("JAMS"), yet never filed it. [*Id.* at ¶ 15].

---

[1] Because this opinion addresses Mr. Hare's motion to dismiss, the Court accepts all factual allegations in Ms. Morse's operative complaint as true.

2

In October 2009, BH&K disbanded. Beforehand, BH&K recommended that Ms. Morse engage Mr. Hare to take over the matter. [*Id.* at ¶¶ 18-19]. On October 19, 2009, Mr. Hare entered his appearance. On May 13, 2010, Judge Joseph M. James entered an order dismissing the complaint because the contract between Ms. Morse and the Advisors contained an arbitration provision that required all disputes be arbitrated before JAMS. [*Id.* at ¶ 30].

Ms. Morse alleges that Mr. Hare failed to inform her that the state-court lawsuit was dismissed and failed to discuss with her the available options, including the need to file her claim with JAMS and the timeframe in which it had to be done. [*Id.* at ¶ 31].

Ms. Morse alleges that between 2010 and 2016, Mr. Hare took no action on her claims against the Advisors. In 2016, Mr. Hare finally filed a JAMS demand. [*Id.* at ¶ 34]. On March 10, 2017, the arbitrator issued a decision granting the Advisors' motion for summary judgment because the claims were time-barred. [*Id.* at ¶ 35]. According to Ms. Morse, Mr. Hare never informed her of the March 10, 2017, decision. [*Id.* at ¶ 36]. Instead, without Ms. Morse's knowledge, Mr. Hare filed in the state-court lawsuit a petition to: (1) vacate the arbitration award, or in the alternative to issue rule to show cause why the arbitration award should not be vacated under 42 Pa. Cons. Stat. Ann. 7341; and (2) appoint an arbitrator pursuant to 42 Pa. Cons. Stat. Ann. 7305. [*Id.* at ¶ 37]. On September 8, 2017, Judge Arnold I. Klein denied the petition. [*Id.* at ¶ 38].

Without informing Ms. Morse of the denial, Mr. Hare filed a notice of appeal, which prompted Judge Klein to issue an order under Pa. R. A. P. 1925(b) dated October 10, 2017. [*Id.* at ¶ 40]. Mr. Hare never informed Ms. Morse of either the notice of appeal or the October 2017 order. [*Id.* at ¶ 41]. On November 3, 2017, Judge Klein issued an opinion in which he found no

3

error with the arbitrator's decision. [*Id.* at ¶ 42]. Mr. Hare never informed Ms. Morse of the opinion. [*Id.* at ¶ 43]. Instead, without Ms. Morse's knowledge, on November 13, 2017, Mr. Hare filed a notice of appeal, appealing the decision to the Pennsylvania Superior Court. [*Id.* at ¶ 44].

On December 6, 2017, the Superior Court issued a rule to show cause why the appeal should not be quashed because the opinion was not an appealable order. [*Id.* at ¶ 45]. Again, Mr. Hare never informed Ms. Morse of the rule to show cause. [*Id.* at ¶ 46]. On December 22, 2017, the Superior Court discontinued the appeal following Mr. Hare's filing of a praecipe for discontinuance. [*Id.* at ¶ 47]. Mr. Hare filed the praecipe for discontinuance without Ms. Morse's knowledge. [*Id.* at ¶ 48].

On July 5, 2018, Mr. Hare filed a praecipe to enter judgment, and judgment was entered on the same date. [*Id.* at ¶ 50-51]. On August 2, 2018, Mr. Hare filed a second notice of appeal without Ms. Morse's knowledge or consent. [*Id.* at ¶ 53]. On March 15, 2019, the Superior Court issued an opinion and order affirming the trial court's order and denying Ms. Morse's petition to vacate the arbitration award. [*Id.* at ¶ 54].

Finally, on March 19, 2019, Mr. Hare emailed Ms. Morse. He attached a copy of the March 15, 2019, opinion and order, informed her of her options, and told her he could not file any further appeals on her behalf. [*Id.* at ¶ 55]. Ms. Morse alleges that March 19, 2019 is the first time that she learned of the dismissal of her state-court action as well as the arbitrator's March 2017 decision. [*Id.* at ¶¶ 36-57]. No appeal was filed, and the judgment for the Advisors and against Ms. Morse is now final. [*Id.* at ¶ 56].

Ms. Morse alleges that, generally, Mr. Hare failed to return her telephone calls, and periodically between 2009 and 2017, he reassured her that the state-court lawsuit was going well and that he expected a favorable

outcome. [*Id.* at ¶ 49]. Ms. Morse alleges, generally, that these were fraudulent representations intended to cover up Mr. Hare's malpractice. [*Id.*].

Ms. Morse claims that the ultimate value of her lawsuit exceeded $7,000,000. [*Id.* at ¶ 59]. Ms. Morse is also seeking emotional-distress damages. In 2005, Ms. Morse retired early from her dental practice due to health problems, and she later developed an aggressive form of cancer that costs her about $5,000 a month in medical treatment. [*Id.* at ¶¶ 60-62]. She claims that Mr. Hare's conduct caused her to suffer severe financial hardship, an extreme fear of running out of money, anxiety, depression, embarrassment, humiliation, emotional distress, mental anguish, inconvenience, and a loss of life's pleasures. [*Id.* at ¶ 63]. Her physicians have informed her that the extreme stress and anxiety she suffered over Mr. Hare's conduct has caused or contributed to the progression and recurrence of her cancer. [*Id.* at ¶ 64].

Against this backdrop, Ms. Morse sets forth a two-count amended complaint against Mr. Hare, alleging professional negligence and IIED/NIED. Mr. Hare has moved to dismiss the complaint.

## **LEGAL STANDARD**

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." However, "detailed pleading is not generally required." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). "The Rules demand 'only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted).

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (citations omitted). The defendant bears the burden of showing that no claim has been presented. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991).

## DISCUSSION & ANALYSIS

Mr. Hare advances two main arguments about why Ms. Morse's complaint should be dismissed: (1) the statute of limitations has passed on both causes of action; and (2) Ms. Morse is not entitled to emotional-distress damages. Mr. Hare also argues that allegations involving the rules of professional conduct should be struck. The Court disagrees.

### I. Further factual development is necessary regarding the statute of limitations.

The crux of Mr. Hare's argument is that the two-year statute of limitations on both of Ms. Morse's claims[2] has run because she knew about the arbitrator's opinion in March 2017. The lynchpin of this argument is a line in the 2019 Superior Court opinion in which the court states: "According to Appellant [Ms. Morse], she was served with the arbitrator's decision on March 16, 2017." *Morse v. Fisher Asset Mgmt., LLC*, 206 A.3d 521, 524 (Pa. Super. Ct. 2019); [ECF 14-1 at pp. 16-28]. From this single line, Mr. Hare contends

---

[2] There is no dispute that the professional-malpractice and emotional-distress claims are both subject to a two-year statute of limitations under 42 Pa.C.S. § 5524(7).

6

that there is no dispute that Mr. Morse knew about the arbitrator's decision in March 2017, and so the statute of limitations was triggered then and expired by March 2019, before this lawsuit started.

Yet Mr. Hare's reading of the 2019 Superior Court opinion does not undisputedly establish that Ms. Morse knew of the arbitrator's decision in March 2017. Rather, Mr. Morse alleges, repeatedly, that she did not know about the arbitrator's decision until March 2019 because Mr. Hare concealed it from her until then. *See, e.g.,* [ECF 14 at ¶¶ 36, 39, 49, 52]. Taking all Ms. Morse's factual allegations as true, which the Court must, Ms. Morse states claims that are not time-barred because of the potential application of at least two tolling doctrines—the discovery rule and the doctrine of fraudulent concealment.

First, "[w]here a plaintiff could not reasonably have discovered his injury or its cause, [] Pennsylvania courts have applied the discovery rule to toll the statute of limitations." *Knopick v. Connelly*, 639 F.3d 600, 607 (3d Cir. 2011) (citations omitted). Under the discovery rule, "the two-year period on legal malpractice actions begins to run where the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause." *Id.* (citation omitted). The "reasonable diligence" standard requires a plaintiff to show "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interests of others." *Nicalaou v. Martin*, 195 A.3d 880, 893 (Pa. 2018) (citation and marks omitted). "[B]ecause the reasonable diligence determination is fact intensive, the inquiry is ordinarily a question for the jury." *Id.* (citation omitted).

Second, the doctrine of fraudulent concealment may also act to toll the statute of limitations when a defendant "through fraud or concealment, . . .

7

causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) (citation omitted). Pennsylvania courts apply the same standard of "reasonable diligence" to determine when tolling takes place under the doctrine of fraudulent concealment. *Id.* at 861.

On a motion to dismiss, the Court will accept as true Ms. Morse's allegations that she only knew of Mr. Hare's alleged malpractice as of March 2019 and that the reason it took so long for her to find out was because Mr. Hare intentionally concealed his misconduct until then. Whether Ms. Morse exercised "reasonable diligence" and should have discovered Mr. Hare's alleged conduct earlier is a "fact intensive" determination that the Court should not make at this time, especially since it is usually reserved for a jury. *See Nicalaou*, 195 A.3d at 893.

Additionally, it is unclear what the Superior Court meant in the above-quoted sentence from its 2019 opinion. The sentence is in the procedural background section and includes no citation to any document or record. It may have simply been the case that when the Superior Court was referring to "Appellant" (*i.e.*, Ms. Morse) being served with the arbitrator's decision on March 17, 2017, it was referring to her attorney receiving it. In judicial opinions, it is often the case that the parties are referred to by name even when they are acting through their lawyers. For example, "Plaintiff Morse filed the complaint" wouldn't necessarily mean she actually filed the complaint; it could and often does mean that her lawyer filed it. All of this is to say that there are reasonable inferences to draw from the Superior Court's sentence that, when construed in Ms. Morse's favor, counsel against granting a motion to dismiss at this stage.

8

Thus, when accepting all facts in the complaint as true and construing them in her favor, Ms. Morse states timely claims. To the extent that Mr. Hare disputes the facts underlying those claims, discovery is needed.

II. **Ms. Morse's emotional-distress claims are allowable under Pennsylvania law.**

Ms. Morse states plausible claims for IIED or NIED because: (1) they are claims recognized by Pennsylvania courts in the context of legal malpractice; and (2) it is too early to reach a conclusion on whether Mr. Hare's conduct was sufficiently "extreme and outrageous" to constitute IIED.

Initially, Pennsylvania courts have allowed claims for emotional distress to go forward along with professional-malpractice claims. While Mr. Hare cites several cases that suggest certain damages (such as those related to a client's suicide)[3] are not recoverable against a former attorney, that does not create a shield against all emotional-distress claims related to professional malpractice.

In fact, in *Schwarz v. Frost*, 40 Pa. D. & C.4th 364, 375 (C.P. Phila. Cnty.), *aff'd*, 734 A.2d 446 (Pa. Super. Ct. 1998), a case cited by both Mr. Hare and Ms. Morse, the court specifically stated: "In Pennsylvania, a breach of a duty may allow recovery for emotional distress where a professional is negligent in the delivery of professional services[.]" While the court, under the specific circumstances of that case, granted defendant's motion for summary judgment on claims for NIED and attorney malpractice, it left the door open for the possibility of emotional-distress claims against attorneys in other cases. *See id.* at 379-80 ("In order to hold an attorney legally liable [for NIED], the

---

[3] *See McPeake v. William T. Cannon, Esquire, P.C.,* 553 A.2d 439 (Pa. Super. Ct. 1989) (holding that former client's suicide could not be basis for wrongful death action since it was extraordinary independent intervening act not reasonably foreseeable by former attorney).

9

plaintiff will need to show that the attorney either breached his contractual duties or acted contrary to his client's professional interests; not simply that the plaintiff had a fragile mental state and could not accept the outcome of the litigation . . . .").

Other courts applying Pennsylvania law in legal-malpractice actions have agreed that NIED or IIED claims are likewise viable. *See Stovall v. Kallenbach,* No. 1683 WDA 2018, 2019 WL 2808297, at *2 (Pa. Super. Ct. 2019) (in discussing IIED claim derived from legal-malpractice claim, the court stated: "We have held that tortious infliction of emotional distress may constitute actionable harm in a professional negligence suit."); *In re Jackson*, 92 B.R. 987, 999 (Bankr. E.D. Pa. 1988) ("We do not agree with the Defendants' contention that punitive damages and damages for emotional distress are not recoverable in a malpractice suit."); *Bangert v. Harris*, 553 F. Supp. 235, 238-39 (M.D. Pa. 1982) (applying Pennsylvania law, the court declined to dismiss intentional infliction of mental distress claims along with legal-malpractice claims). Thus, contrary to Mr. Hare's position, Ms. Morse's emotional-distress claims are colorable under Pennsylvania law.

The additional question of whether Ms. Morse can prove her emotional-distress claims is better addressed after further factual development in discovery, or potentially at trial. That is, while Mr. Hare argues that Ms. Morse cannot state an IIED claim because the conduct alleged is not sufficiently "extreme and outrageous," the amended complaint pleads enough to state a claim. Ms. Morse essentially pleads that her attorney actively concealed from her years of litigation, and that when his misconduct was ultimately revealed to her, it caused her to lose an otherwise viable $7 million claim and suffer a recurrence of cancer, among other medical conditions. [ECF 14 at ¶¶ 59-64, 73-79]. At this early stage, these allegations describe

sufficiently "outrageous" conduct, in the context of legal malpractice, to survive a motion to dismiss. *See Bangert*, 553 F. Supp. at 238–39 (IIED claims in legal-malpractice case survived motion to dismiss); *Rivera v. Cracker Barrel Old Country Store Inc.,* No. 02-4160(JBS), 2003 WL 21077965, at *6 (D.N.J. Mar. 3, 2003) ("rare is the dismissal of an intentional infliction of emotional distress claim on a motion to dismiss") (citing cases).

### III. The Court also denies Mr. Hare's motion to strike.

In addition to his Rule 12(b)(6) arguments, Mr. Hare has moved to strike, under Rule 12(f), allegations in the amended complaint which accuse him of violating the rules of professional conduct. He argues that violations of those rules do not give rise to private causes of action, and so should be struck.

The standard to strike is strict. Rule 12(f) motions are "highly disfavored"[4] and the moving party must show that the presence of any surplus allegations is prejudicial. *Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp. 2d 529, 532 (E.D. Pa. 2013); *Newborn Bros. Co., Inc. v. Albion Eng'g Co.,* 299 F.R.D. 90, 94 (D.N.J. 2014). "[O]nly allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (internal quotations omitted).

Based on this strict standard, the Court will deny the motion to strike. Ms. Morse's references to the rules of professional conduct are not pled as separate causes of action, and so there is no real prejudice to Mr. Hare if they are included in the amended complaint. Further, violations of those rules could potentially be used as evidence in the case, and thus they are not "so unrelated to plaintiffs' claims as to be unworthy of any consideration." *See, e.g., Strayer*

---

[4] *EEOC v. FedEx Ground Package Sys., Inc.,* 158 F. Supp. 3d 393, 405 n.17 (W.D. Pa. 2016).

11

*v. Bare*, No. 3:06–CV–2068, 2011 WL 13214340, at *1 (M.D. Pa. June 21, 2011) (allowing expert testimony on obligations under Pennsylvania rules of professional conduct because "[w]hile an ethics violation is itself not actionable in damages, that same behavior may independently give rise to a cause of action"); *Hecht v. Ryan*, No. 10-7440, 2012 WL 12904141, at *1 (E.D. Pa. Nov. 8, 2012) (denying motion *in limine* to preclude opinions based on rules of professional conduct because party can use those rules "to inform and define a standard of care.").

## **CONCLUSION**

For all the reasons discussed above, Mr. Hare's motions to dismiss and strike [ECF 16] are **DENIED**. An appropriate order follows.

DATED this 19th day of February, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge